**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ROSEMARY K. PATAKY** **PLAINTIFF**

**v.** **NO. 4:25-cv-01027-LPR-PSH**

**FRANK J. BISIGNANO, Commissioner of the Social Security Administration** **DEFENDANT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Rosemary K. Pataky ("Pataky") challenges the denial of her application for disability insurance benefits. She does so on the ground that her residual functional capacity was erroneously assessed. Specifically, Pataky maintains that the Administrative Law ("ALJ") failed to properly evaluate the medical opinions, failed to properly evaluate Pataky's subjective complaints and the representations made by her husband, and failed to "build a logical bridge between the evidence and [Pataky's residual functional capacity]." See Docket Entry 6 at CM/ECF 15. Substantial evidence on the record as a whole supports the ALJ's decision, and he committed no legal error.[1] It is therefore recommended that the ALJ's decision be affirmed and this case be dismissed.

Pataky was born on June 24, 1963, and was fifty-nine years old on January 12, 2023, the alleged onset of disability date. She alleged that she became disabled and unable to work as a result of pain and swelling in her knees and right ankle; pain in her neck, shoulders, and back; pain and numbness in her hands; and obesity.

[1] The question in this case is whether the ALJ's findings are supported by substantial evidence on the record as a whole and not based on legal error. See Sloan v. Saul, 933 F.3d 946 (8th Cir. 2019).

Pataky, as noted, maintains that her residual functional capacity was erroneously assessed. She offers three reasons why, the first being that the ALJ failed to properly evaluate the medical opinions of Dr. Patricia McGarry, M.D., ("McGarry") and Dr. Chris Reed, D.C., ("Reed").

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). In making the assessment, the ALJ must consider the medical opinions in the record. See Wagner v. Astrue, 499 F.3d 842 (8th Cir. 2007). The regulations governing the consideration of such opinions provide the following:

> ... [ALJs] "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. ... Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. ... ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. ... The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. ...

See Phillips v. Saul, No. 1:19-cv-00034-BD, 2020 WL 3451519, 2 (E.D.Ark. June 24, 2020).

McGarry's medical opinions. The record reflects that McGarry saw Pataky on two occasions for comprehensive medical examinations. See Transcript at 306-307 (02/27/2023), 680-681 (04/23/2024). Pataky's medical history included a total left knee replacement on January 12, 2023. See Transcript at 675-677. McGarry's first progress note reflects that Pataky's recovery was initially very good. She subsequently fell, though, and required a second surgery.[2] McGarry's second progress note reflects that as of April 23, 2024, Pataky had been unable to return to work because of complications following her surgery. Pataky reported that she had previously worked as a dental assistant and had difficulty holding dental instruments. Her medical history also included, inter alia, osteoarthritis, a mild major depressive disorder, and anxiety.

McGarry's progress notes from the two presentations are remarkably similar with respect to the findings and observations she made. The results of mental status examinations were unremarkable. For instance, McGarry observed that Pataky had an appropriate mood, affect, and thought content. Pataky's thought processes were logical and relevant, and her judgment was "realistic with normal insight into [her] present condition."

---

[2] In fact, Pataky reported at the second presentation that she has had four surgeries on her left knee. See Transcript at 680.

See Transcript at 306, 680. The results of physical examinations were very minimal and equally unremarkable. For instance, McGarry observed, among other things, that Pataky's extremities had no cyanosis, clubbing, or edema. McGarry assessed, inter alia, osteoarthritis and morbid obesity. McGarry ordered testing and continued Pataky on medication that included diclofenac for her pain and osteoarthritis.

On April 23, 2024, McGarry completed a medical source statement on Pataky's behalf. See Transcript at 836-839. McGarry represented that Pataky has pain in her neck, back, and knees; pain and numbness in her hands; and frequently experiences pain severe enough to interfere with the attention and concentration needed to perform simple tasks. McGarry estimated the severity of Pataky's pain as seven on a ten point pain scale. The clinical findings and objective signs supporting the opinions were "pain" and a total left knee replacement. See Transcript at 836. According to McGarry, Pataky can only sit, stand, and walk for less than two hours total in an eight-hour workday. With prolonged sitting, though, she does not need to elevate her legs. She can rarely move her head or hold it in a static position. In a workplace setting, she requires a job permitting her to change positions at will. She can never use her arms to reach; never use

her hands to grasp, turn, or twist objects; and never use her fingers for fine manipulations.

The ALJ assessed Pataky's residual functional capacity and found that Pataky can perform the full range of light work. In so finding, the ALJ found McGarry's medical opinions unpersuasive for the following reasons:

> ... McGarry's opinion is not supported by her treatment records. Treatment records do not include complaints of severe pain, nor has strong pain medication been prescribed. Records do not include any imaging studies of the spine or hands, nor do they include any reports of severe or acute pain. The opinion is inconsistent with [Pataky's] actual functioning, as an inability to ever use the hands or fingers or ever to reach would result in a need for full time assistance with every aspect of daily living, and [she] has reported being independent with personal hygiene, performing light household chores, mowing small patches of lawn, panting, shopping, and driving. The limitation to sitting, standing, or walking for less than 2 hours each in an 8-hour day is also inconsistent with [her] activities of daily living, as she has not reported an excessive need to lie down throughout the day. These activities are also inconsistent with the limitation to only rarely moving her head or holding it still. It is inconsistent with [Pataky's] report that her pain does not affect her ability to think or concentrate, and it is inconsistent with her report that she sometimes needs to elevate her legs due to swelling in her knee or ankle. ...

<u>See</u> Transcript at 31-32.

Pataky maintains that the activities she can do at home were erroneously compared with what she cannot do in a workplace setting. She

also maintains that the record was misconstrued as it substantiates her use of strong pain medication and the presence of imaging studies.

Substantial evidence on the record as a whole supports the ALJ's treatment of McGarry's medical opinions. The undersigned so finds for the following reasons.

First, the ALJ could find, as he did, that McGarry's medical opinions are not persuasive because they are not supported by McGarry's own progress notes. McGarry opined, and the ALJ found, that Pataky has limitations caused by a total left knee replacement and osteoarthritis. The ALJ accounted for the limitations in assessing Pataky's residual functional capacity. McGarry's notes otherwise contain minimal and unremarkable observations about Pataky's impairments and the exertional, postural, or manipulative limitations they cause. To the extent McGarry made any observations, she repeatedly observed that Pataky had an appropriate mental status. McGarry's observations about Pataky's physical condition were even less detailed, as McGarry simply observed that Pataky had no cyanosis, clubbing, or edema in her extremities. McGarry treated Pataky conservatively, prescribing only medication for her pain. The ALJ could also note that McGarry did not base her opinions on imaging studies or medical testing she had performed, as she simply noted that her opinions were

based on "pain" and a total left knee replacement. McGarry's opinions appear to have been based, in part, on Pataky's subjective complaints.

Second, the ALJ could find, as he did, that McGarry's medical opinions are not persuasive because they are inconsistent with other evidence. For instance, McGarry's opinions are inconsistent with the findings and observations of Dr. Benjamin Stronach, M.D. ("Stronach"), who appears to have seen Pataky on at least three occasions between May 31, 2023, and August 15, 2023. See Transcript at 502-507. Stronach initially observed that Pataky was having a difficult time making a full recovery from her total left knee replacement. When Stronach saw Pataky on August 15, 2023, though, Pataky reported significant improvement in the pain and swelling in her knee, as well as significant improvement in her range of motion. She reported being "very happy" with the results of the surgery and was "completely functional with no need for assistive devices," see Transcript at 502, although she did report occasional soreness in her knee. Stronach assessed "left knee wound dehiscence" and noted the following:

> ... [Pataky] overall is doing great. We had significant concerns about potential infection in the knee but she has healed well and her labs were close normalizing [sic] we had last saw her with no evidence of infection on her aspiration. She functionally is very happy with the knee. She does have some

> scarring over the skin but this all appears to be well healed with no evidence of infection. ...

See Transcript at 503.

McGarry's medical opinions are also inconsistent with Pataky's actual functioning, and the ALJ did not err when he relied, in part, on activities Pataky can perform outside the workplace setting. For instance, the ALJ noted that Pataky is capable of attending to her own personal care, performing light household chores, shopping for light grocery items, mowing parts of her lawn, and operating an automobile. The ALJ could find that it is unlikely Pataky can perform those activities were her physical limitations as restricted as McGarry opined. Additionally, the ALJ could also take note that Pataky's knee pain and functioning were improving. See Transcript at 45.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, "[a] reviewing court may not reverse the [ALJ's] decision merely because substantial evidence would have supported an opposite decision." See Id. (internal quotations and citations omitted).

Here, the ALJ could find as he did with respect to McGarry's medical opinions as the ALJ's findings are supported by good reasons and based on substantial evidence on the record as a whole.

Reed's medical opinions. Reed appears to have seen Pataky for chiropractic treatments over the course of a number of years, although the record appears to only contain Reed's progress notes from January 14, 2022, through May 23, 2024. See Transcript at 415-497, 521-622, 703-764, 765-835. Although Reed's notes are remarkably similar, an attempt to summarize them here will not be attempted. Instead, the undersigned makes mention of one note, that being the note from Pataky's April 25, 2024, presentation. See Transcript at 720-722.

The progress note from that presentation reflects that Pataky presented for a wellness adjustment, which was her eightieth visit since August 17, 2017. Her chief complaint was right side, low back pain. She reported that her "discomfort/pain intensity/severity" level was a one on a ten point pain scale. See Transcript at 720. Reed observed that Pataky was not complaint free but wanted to "continue to receive the benefits [she had] gained since beginning care." See Transcript at 720. Pataky reported no significant changes in her functional status and no recent trauma or exacerbation. Reed observed that Pataky had misaligned

segments that were contributing to her postural imbalance and apparently causing, inter alia, pain, a limited range of motion, and "tissue tone changes" in her back, pelvis, and knee. See Transcript at 720.

The following day, or August 26, 2024, Reed completed a medical source statement on Pataky's behalf. See Transcript at 840-843. Reed represented that Pataky suffers from severe osteoarthritis causing pain, stiffness, and numbness. Reed noted that Pataky rated her pain as being "between a [seven] to [eight] out of ten ..." See Transcript at 840. The clinical findings and objective signs supporting the opinions were Pataky's "[v]ery limited [range of motion], knee replacement, severe [osteoarthritis] of the ankle with deformity. See Transcript at 840. Reed opined that Pataky can only sit, stand, and walk for less than two hours total in an eight-hour workday. With prolonged sitting, though, she does not need to elevate her legs. She can only occasionally turn her head or hold it in a static position. She has significant limitations in her abilities to reach, use her hands, and perform fine manipulation. In a workplace setting, she requires a job permitting her to change positions at will. She can only use her hands to grasp, turn, and twist objects, and can only use her fingers for fine manipulation, for about five percent of an eight-hour workday. She can never use her arms for reaching.

In assessing Pataky's residual functional capacity, the ALJ found Reed's medical opinions unpersuasive. The ALJ gave the following reasons for so finding:

> This opinion is not supported by ... Reed's treatment records, which indicate [Pataky's] pain was consistently rated at level 1, and that her primary impairment was right sided low back pain. There is no treatment evidence pertaining to [her] ability to lift, carry, or walk, and there is no evidence of any shoulder, neck, or arm impairment that would affect [her] ability to reach. Furthermore, [Reed's] opinion is internally inconsistent, as an inability to move the neck in any direction more than occasionally would result in significantly greater functional limitation than [Pataky] has reported, and an ability to use the hands no more than [five percent] of the day would require an individual to have significant assistance with their basic activities of daily living, with which [she] is incontrovertibly independent. ... Reed's statement that [Pataky] did not require the ability to elevate her legs is inconsistent with [her] testimony about knee and foot swelling requiring her to raise her legs and further supports the absence of substantial treatment of those joints. Furthermore, there is no mention in [Reed's] treatment records of [Pataky's] multiple knee surgeries, which also suggests he did not provide substantial treatment for her knee, other than brief laser therapy treatments. Furthermore, this opinion is inconsistent with [Pataky's] actual functioning. She has reported driving, performing light household chores, shopping for light grocery items, and mowing small parts of the lawn. She can bathe and dress herself, prepare simple meals, and attend medical appointments independently. It is inconsistent with [Pataky's] testimony that her impairments do not affect her ability to think or concentrate. While her knee surgery and complications significantly limited her mobility for some [eight] months in 2023, she has acknowledged that her knee pain and function is significantly better now. Her ability to perform this range of

> activities suggests an adequate ability to stand, walk, bend, move about, reach, and manipulate objects. ...

See Transcript at 32-33.

Pataky maintains that Reed's medical opinions were erroneously evaluated. Pataky so maintains primary because the ALJ gave no valid reasons for finding as he did, and he improperly compared the activities Pataky can do at home with what she cannot do in a workplace setting.

Substantial evidence on the record as a whole supports the ALJ's treatment of Reed's medical opinions. The undersigned so finds for the following reasons.

First, the ALJ could find, as he did, that Reed's medical opinions are not persuasive because they are not supported by Reed's own progress notes. The notes contain very minimal and unremarkable observations about Pataky's impairments and the exertional, postural, or manipulative limitations they cause. For instance, at the April 25, 2024, presentation, her chief complaint was right side, low back pain. She made no mention of other impairments that cause limitations, and Reed made no observations about any significant limitations. Although Pataky had pain and a limited range of motion in her back, pelvis, and knee, she rated the pain as a one on a ten point pain scale. She reported no significant changes in her

functional status and no recent trauma or exacerbation. Reed treated Pataky conservatively, providing chiropractic treatments and performing an occasional laser therapy treatment.

Second, the ALJ could find, as he did, that Reed's medical opinions are not persuasive because they are inconsistent with other evidence. For instance, Reed's opinions are inconsistent with Stronach's findings and observations. As noted above, when Stronach saw Pataky on August 15, 2023, Pataky reported significant improvement in the pain and swelling in her knee, as well as significant improvement in her range of motion. She reported being "very happy" with the results of the surgery and was "completely functional with no need for assistive devices," see Transcript at 502, although she did report occasional soreness in her knee.

Reed's medical opinions are also inconsistent with Pataky's actual functioning, and again, the ALJ did not err when he relied, in part, on activities Pataky can perform outside the workplace. For instance, Pataky can attend to her own personal care, perform light household chores, shop for light grocery items, mow parts of her lawn, and operate an automobile. The ALJ could find that it is unlikely Pataky can perform those activities were her physical limitations as restricted as Reed opined.

As noted above, it is not the role of the court to re-weigh the evidence. The ALJ in this instance could find as he did with respect to Reed's medical opinions as the ALJ's findings are supported by good reasons and based on substantial evidence on the record as a whole.

Pataky offers a second reason why her residual functional capacity was erroneously assessed. Pataky maintains that the ALJ erred in evaluating Pataky's subjective complaints and the representations made by her husband.

In assessing the claimant's residual functional capacity, the ALJ must evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. In doing so, the ALJ must consider all the evidence in the record, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has

> received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p. See also Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984); 20 C.F.R. 404.1529. The ALJ is also obligated to consider the representations of any lay witnesses. See Willcockson v. Astrue, 540 F.3d 878 (8th Cir. 2008) (statements of lay persons regarding claimant's condition must be considered when evaluating her subjective complaints of pain).

In evaluating Pataky's subjective complaints, the ALJ noted his obligation to comply with the factors set forth in Social Security Ruling 16-3p and 20 C.F.R. 404.1529. The ALJ then noted Pataky's allegations with respect to her symptoms and limitations, summarizing her testimony during the administrative hearing and the representations she made in function reports dated July 22, 2023, and November 16, 2023. See Transcript at 27-29, 219-226, 246-253. The ALJ additionally summarized the representations made by Pataky's husband, Jeffrey Pataky, in a July 22, 2023, third party function report. See Transcript at 28, 227-234. The ALJ found that although Pataky's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record ..." See Transcript at 29.

The ALJ's evaluation of Pataky's subjective complaints was adequate and is supported by substantial evidence on the record as a whole. The undersigned so finds for the following reasons.

First, the ALJ adequately evaluated the evidence relevant to the intensity, persistence, and limiting effects of Pataky's pain or other symptoms.[3] Specifically, the ALJ considered the medical evidence relevant to Pataky's total left knee replacement, noting that the "complications of her knee surgery were effectively resolved by August of 2023." See Transcript at 29. The ALJ considered Pataky's daily activities, noting that although she reported being able to lift only light objects at the grocery store, "she is able to wash dishes, do laundry, prepare simple meals, and drive a car independently." See Transcript at 29. The ALJ considered the location, duration, frequency, and intensity of Pataky's pain or other symptoms, noting that her back pain is "stable and fairly mild" and

[3] The ALJ could find, as he did, that Pataky has medically determinable impairments that could reasonably be expected to produce pain and other symptoms.

"consistently rated at a severity level of only [one]." See Transcript at 29. The ALJ also considered her use of pain medication, noting that she takes diclofenac for arthritis pain, and considered her "regular chiropractic manipulations that have proven helpful. See Transcript at 29.

Second, the undersigned is satisfied that the ALJ adequately considered the representations made by Jeffrey Pataky in his third party function report. Admittedly, the ALJ did not give a reason for rejecting or otherwise finding Jeffrey Pataky's representations unpersuasive, but the ALJ's failure to do so does not warrant a remand. In Buckner v. Astrue, 646 F.3d 549 (8th Cir. 2011), the Court of Appeals held that "it was not reversible error for the ALJ to fail to mention lay witness evidence where the same evidence that the ALJ referred to in discrediting the claimant's testimony also discredited the lay witness evidence and the ALJ's decision did not suffer from 'other deficiencies.'" See Woodland v. Colvin, No. 4:15-cv-925-NAB, 2016 WL 4762079, 3 (E.D.Mo. Sept. 13, 2016). Here, the same evidence that the ALJ referred to in discrediting Pataky's representations also discredited Jeffrey Pataky's representations, and the ALJ's decision does not suffer from other deficiencies.

The question for the ALJ was not whether Pataky has pain, but the extent to which her pain impacts the most she can do. The ALJ

incorporated limitations for Pataky's pain into the assessment of Pataky's residual functional capacity but not to the extent she believes is warranted. The ALJ could find as he did, though, as substantial evidence on the record as a whole supports his evaluation of the evidence.

Pataky offers a third reason why her residual functional capacity was erroneously assessed. Pataky maintains that the ALJ failed to "build a logical bridge between the evidence and [Pataky's residual functional capacity]." See Docket Entry 6 at CM/ECF 15. It is Pataky's contention that her need to change positions at will should have been considered, as well as the fatigue and impaired balance caused by her obesity.

Social Security Ruling 96-8p provides, in part, that the assessment of a claimant's residual functional capacity must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ..." See 1996 WL 374184, 7. There is language in the ruling that explains the purpose and relevance of doing what is oftentimes referred to as a "function-by-function" assessment of a claimant's limitations or restrictions, but "as long as the ALJ discusses how the evidence supports his conclusion[s], he has met the requirements of [Social Security Ruling] 96-8p." See

Shakespear v. Astrue, No. 3:10-cv-00176-BSM, 2011 WL 4479252, 5 (E.D.Ark. Sept. 28, 2011).

Here, the ALJ met his obligations under Social Security Ruling 96-8p and could find as he did with respect to Pataky's residual functional capacity. The undersigned so finds for the following reason.

The ALJ supported his assessment of Pataky's residual functional capacity by evaluating specific medical facts and nonmedical evidence. For instance, the ALJ noted and evaluated Pataky's left knee impairment and the limitations it causes, see Transcript at 29-30; her back impairment and the limitations it causes, see Transcript at 29-30; her obesity and the limitations it causes, see Transcript at 30-31; the medical opinions, see Transcript at 31-33; and her subjective complaints as reflected in her function reports, her testimony during the administrative hearing, and her husband's third-party function report, see Transcript at 27-29. On the heels of that evaluation, the ALJ found that Pataky could perform a full range of light work and is therefore capable of performing her past relevant work.

Pataky faults the ALJ for failing to account for two other limitations in the assessment of Pataky's residual functional capacity: her need to change positions at will and the fatigue and impaired balance caused by her obesity. The ALJ, though, could find as he did. Although McGarry and

Reed agreed that Pataky requires a job permitting her to change positions at will, the ALJ could find their opinions unpersuasive. With respect to Pataky's obesity, the ALJ recognized that it likely causes fatigue and impaired balance, see Transcript at 31, and he appears to have accounted for those limitations in making the assessment.

It is for the foregoing reasons that substantial evidence on the record as a whole supports the ALJ's findings, and he committed no legal error. The undersigned therefore recommends that the ALJ's decision be affirmed. Pataky's complaint should be dismissed, all requested relief should be denied, and judgment should be entered for the Commissioner of the Social Security Administration.

DATED this 3rd day of August, 2026.

UNITED STATES MAGISTRATE JUDGE